The Honorable Karen A. Overstreet
Chapter 11

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re

THE CASCADIA PROJECT LLC
EIN: 20-4188863,

Debtor.

Case No. 09-20780-KAO

SECOND AMENDED PLAN OF REORGANIZATION



**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| ARTICLE 1 | DEFINITIONS | 1 |
| ARTICLE 2 | MEANS FOR EXECUTION OF PLAN | 5 |
| 2.1 | Acquisition | 5 |
| 2.2 | Estate Property Inconsistency Between This Plan and the Letter of Intent | 6 |
| 2.3 | Inconsistency Between This Plan and the Letter of Intent | 6 |
| ARTICLE 3 | UNCLASSIFIED CLAIMS | 6 |
| 3.1 | Administrative expenses | 6 |
| 3.2 | Priority Tax Claims | 7 |
| ARTICLE 4 | CLASSIFIED CLAIMS | 7 |
| 4.1 | Class 1 (convenience Unsecured Claims) | 7 |
| 4.2 | Class 2 (Unsecured Claims) | 8 |
| 4.3 | Class 3 (HomeStreet) | 8 |
| 4.4 | Class 4 (City of Tacoma) | 15 |
| 4.5 | Class 5 (Kuo's Claim based on payment to HomeStreet) | 16 |
| 4.6 | Class 6 (Interest) | 16 |
| 4.7 | Class 7 (Cascadia Land, LLC) | 16 |
| ARTICLE 5 | DISPUTED CLAIMS; CLAIM OBJECTIONS | 16 |
| ARTICLE 6 | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 17 |
| ARTICLE 7 | EFFECT OF CONFIRMATION | 17 |
| ARTICLE 8 | ADMINISTRATIVE PROVISIONS | 17 |
| 8.1 | Post-Effective Date United States trustee fees | 17 |
| 8.2 | Modification or withdrawal of plan | 17 |
| 8.3 | Revocation or withdrawal of plan | 18 |
| 8.4 | Nonconsensual confirmation | 18 |





MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

**TABLE OF CONTENTS**
**(continued)**

**Page**

8.5 Small distributions ..... 18

8.6 Unclaimed distributions ..... 18

ARTICLE 9 RETENTION OF JURISDICTION ..... 19

ARTICLE 10 MISCELLANEOUS PROVISIONS ..... 20

10.1 Governing law ..... 20

10.2 Withholding and reporting requirements ..... 20

10.3 § 1146(c) exemption ..... 20

10.4 Severability ..... 21

10.5 Binding effect ..... 21

10.6 Plan controls ..... 21

10.7 Effectuating documents and further transactions ..... 21

ARTICLE 11 DEFAULT ..... 22

11.1 Event of default; consequences ..... 22



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

The Cascadia Project LLC, a Washington limited liability company ("Cascadia"), proposes this second amended plan of reorganization dated July 2, 2010.

## ARTICLE 1

## DEFINITIONS

Unless the context requires otherwise, terms not defined in this plan but defined in the Bankruptcy Code or the Bankruptcy Rules have the meanings assigned there. Captions and headings to articles, sections, and exhibits exist only for convenience of reference and are not part of, nor do they affect interpretation of, this plan. In computing any period prescribed or allowed by this plan, Bankruptcy Rule 9006(a) applies.

1.1 "§" means section of the Bankruptcy Code, title 11 of the United States Code.

1.2 "Allowed Secured Claim" means an Allowed Claim that is secured by a lien in property in which Cascadia has an interest or that is subject to setoff under Bankruptcy Code § 553, to the extent of the value (as set forth in this plan, or if no value is specified, as determined in accordance with Bankruptcy Code § 506(a)) of the interest of the holder of the Claim in Cascadia's interest in the property or to the extent of the amount subject to setoff, as the case may be.

1.3 "Allowed Unsecured Claim" means an Allowed Claim that is not an Allowed Secured Claim.

1.4 "Allowed" means, with respect to any Claim, proof of which has been properly and timely Filed or, if no Proof of Claim was so Filed, any Claim that was or hereafter is listed on the Schedules as liquidated in amount and not disputed, contingent, or unliquidated and, in any case, as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, is Filed within any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

to which any objection, or any motion to estimate for purposes of allowance, has been so Filed, to the extent allowed by a Final Order.

1.5 "Bankruptcy Code" means title 11 of the United States Code.

1.6 "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Washington, in which this case is pending, or another court that exercises jurisdiction over this case or any proceeding therein, including the United States District Court for the Western District of Washington to the extent that the reference to this case or any proceeding therein is withdrawn.

1.7 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules and standing orders of the Bankruptcy Court.

1.8 "Business Day" means a day other than a Saturday, Sunday, or legal holiday.

1.9 "Cascadia" means The Cascadia Project LLC, as debtor in possession in this case.

1.10 "Cascadia Resort Communities LLC" means the Washington limited liability company of which Cascadia is manager and in which Cascadia and Sumitomo Forestry Seattle, Inc., are each 50-percent members.

1.11 "Cash" means lawful currency of the United States of America.

1.12 "Chen" means Mr. Y. K. Chen, the postpetition lender to Cascadia.

1.13 "Claim" means a claim against Cascadia arising or deemed to have arisen before the Petition Date.

1.14 "Class" means one of the classes of Claims defined in Article 4 below.

1.15 "Committee" means the official unsecured creditors' committee in this case.

1.16 "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

1.17 "Confirmation Order" means the order of the Bankruptcy Court confirming this plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.18 "Cascadia Land, LLC" means Cascadia Land, LLC.

1.19 "Creditor" means any entity holding a Claim.

1.20 "Disclosure Statement" means the disclosure statement with respect to this plan as approved by the Bankruptcy Court.

1.21 "Disputed Claim" means a Claim with respect to which a Proof of Claim has been timely Filed or deemed timely Filed under applicable law and as to which an objection, timely Filed, has not been withdrawn by the Effective Date or any date fixed for filing the objection by order of the Bankruptcy Court and has not been denied by a Final Order and which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely motion by the holder of the Claim. If an objection related to the allowance of only a part of a Claim has been timely Filed or deemed timely Filed, the Claim is a Disputed Claim only to the extent of the objection.

1.22 "Effective Date" means the later of (i) the Confirmation Date; and (ii) the date each condition set forth in this plan and the New Bank Documents, other than a condition that has been waived by the party whom the condition does or could benefit, has been satisfied. Within three Business Days after the occurrence of the Effective Date, an authorized Cascadia representative must sign under penalty of perjury and File a declaration identifying the date that was the Effective Date. Unless otherwise specified in this plan, all obligations imposed by this plan must be performed by the Effective Date, and all other events that will occur by reason of confirmation of this plan will be deemed to have occurred on the Effective Date and only if the Effective Date occurs.

1.23 "Filed" means filed with the Bankruptcy Court in this case.

1.24 "Final Order" means an order or judgment entered on the docket by the Clerk of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and,



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

if any entity has objected to the request for the relief granted in the order or judgment, as to which the time for filing a notice of appeal, petition for certiorari or request for certiorari, or request for rehearing has expired.

1.25 "Guarantors" means the guarantors of the obligations of Cascadia to HomeStreet:

Cascadia Development Corporation
Pacific Cascade Corporation
Cascadia Land, LLC
Patrick Kuo
Tsuey-Fang N. Chen

1.26 "Holdings" means a new entity owned 90 percent by TPG, 8 percent by Yarrow Bay, and 2 percent by OFG, which will hold the membership interest in Cascadia.

1.27 "HomeStreet" means HomeStreet Bank.

1.28 "Interest" means Kuo's pre-Effective Date membership in Cascadia.

1.29 "Kuo" means Patrick Kuo.

1.30 "New Bank Documents" means the replacement loan documents Cascadia provides to HomeStreet's lawyer not later than seven days before the first date set for the hearing to consider approval of Cascadia's proposed disclosure statement with respect to this plan. To the extent the New Bank Documents conflict with this plan, this plan controls, and Cascadia will revise the New Bank Documents to conform to this plan.

1.31 "OFG" means OFG Cascadia, LLC, a Washington limited liability company.

1.32 "Other Priority Claim" means any Claim for an amount entitled to priority in right of payment under Bankruptcy Code § 507(a)(3), (4), (5), or (6).

1.33 "Petition Date" means October 15, 2009, when Cascadia filed the petition commencing this case.

1.34 "Prime Rate" means the "Prime" rate published in The Wall Street Journal, or the highest such rate if The Wall Street Journal publishes more than one, on the



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

Effective Date or, if The Wall Street Journal is not published on the Effective Date, on the first Business Day thereafter, regardless of whether any lender actually charges that rate.

1.35 "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to priority under Bankruptcy Code § 507(a)(8).

1.36 "Project" means the land owned by Cascadia, including all related rights and entitlements.

1.37 "Scheduled Amount" means the amount of a Claim listed in Cascadia's Schedules if not listed as disputed, contingent, or unliquidated.

1.38 "Schedules" means the Schedules of Assets and Liabilities Filed by Cascadia pursuant to Bankruptcy Code § 521, as amended, modified, restated or supplemented from time to time.

1.39 "Section" means section of this plan.

1.40 "TPG" means TPG Opportunities Partners, L.P., or an affiliate of TPG Opportunities Partners, L.P., selected by TPG Opportunities Partners, L.P.

1.41 "Unsecured Claim" means a Claim that is not an administrative expense, a Secured Claim, a Priority Tax Claim, or an Other Priority Claim.

1.42 "Yarrow Bay" means YB Cascadia, LLC.

## ARTICLE 2

## MEANS FOR EXECUTION OF PLAN

2.1 Acquisition. Cascadia will consummate the Acquisition described in this plan, the Letter of Intent attached as Exhibit 1 (the "Letter of Intent"), and the New Bank Documents substantially on the terms and conditions set forth therein. Attached as Exhibit 2 is a letter from TPG acknowledging the filing of the First Amended Plan of Reorganization [Dkt. #449]. If HomeStreet elects Option 3 under Section 4.3 below, Cascadia and HomeStreet will make appropriate revisions to the New Bank Documents. Without limitation, without further action by the Bankruptcy Court or any entity, Cascadia will cancel



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

the Interest and will issue the sole membership in Cascadia to Holdings. To make the final payments due to HomeStreet under Section 4.3 below, Cascadia will use cash on hand, an additional equity investment, new borrowing, a sale of all or a part of its assets, and/or other means described herein. Cascadia will continue as manager of Cascadia Resort Communities LLC.

2.2 Estate property. Except to the extent provided in Section 4.3 below, all estate property will revest in Cascadia. Property that revests in Cascadia will be free and clear of all claims and interests of creditors and equity security holders in Cascadia as otherwise provided herein. Except as set forth in Section 4.3.4.6 below, Cascadia reserves and does not waive its claims against others, including claims for damages resulting from HomeStreet's attorney's June 11, 2010, letter to Cascadia's attorneys and avoidance and recovery claims under Bankruptcy Code chapter 5, and its defenses to others' claims. Further, Cascadia preserves and does not waive its claim against Michels Directional Crossings/Michels Corporation based on a failed tunnel bore project and against Centex/Pulte Homes based, among other things, on fraud and misrepresentation. For purpose of bringing claims after the Effective Date, Cascadia will be the estate representative within the meaning of 11 U.S.C. § 1123(b)(3)(B).

2.3 Inconsistency Between This Plan and the Letter of Intent. To the extent any provisions in the Letter of Intent conflict with this plan, this plan controls.

## ARTICLE 3

## UNCLASSIFIED CLAIMS

3.1 Administrative expenses. Except as otherwise set forth herein, Cascadia will pay all administrative expenses on the later of the Effective Date or the date the Bankruptcy Court enters a Final Order determining the amount of an administrative expense, such as a Claim for professional person compensation and expense reimbursement. Cascadia will pay Chen's claim for administrative expense based on his prepetition and postpetition



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

loans in full on the Effective Date, upon which Chen's lien against any property of Cascadia and any other collateral will terminate.

3.2 Priority Tax Claims. Except as otherwise provided in this plan, Cascadia will pay Priority Tax Claims, with interest at the rate of 12 percent per annum, by the 60th day after the Effective Date. The product of the amount of 2009 real property taxes due from Cascadia and a fraction, the numerator of which is the number of days from the October 15, 2009, Petition Date through December 31, 2009, and the denominator of which is 365, plus the product of the amount of 2010 real property taxes due from Cascadia and a fraction, the numerator of which is the number of days from January 1, 2010, through the day before the Effective Date and the denominator of which is 365, but no other real property tax, other than any tax penalties entitled to priority under 11 U.S.C. § 506(b). Cascadia's postpetition payments on account of real property taxes must be applied first to the administrative-expense portion of the real property taxes and then to the balance of the real property taxes. Cascadia will pay the unpaid portions of 2009 and 2010 real property taxes entitled to administrative-expense priority, without interest, on the later of the Effective Date or the date payment of those amounts would otherwise be due.

## ARTICLE 4

## CLASSIFIED CLAIMS

This plan classifies and treats in this article Claims that this plan does not treat in Article 3 above.

4.1 Class 1 (convenience Unsecured Claims). Class 1 consists of Unsecured Claims of $10,000 or less and Unsecured Claims of more than $10,000 the holders of which elect Class 1 treatment on a timely tendered ballot with respect to this plan. Cascadia will pay Class 1 Claims in full, without interest, by the later of the 30th day after the Effective Date or the date the Bankruptcy Court enters its Final Order determining the Claim. This plan impairs the Class 1 Claims.



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

4.2 Class 2 (Unsecured Claims). Class 2 consists of Allowed Unsecured Claims, other than those in Class 1 or that of Cascadia Land, LLC. Cascadia will pay the lesser of the sum of all Allowed Class 2 Claims or $2,131,929 ratably to the holders of those Claims in 20 equal quarterly payments without interest, with the first payment due by the 10th day of the third month after the Effective Date and subsequent payments due by the 10th day of each third month thereafter. Cascadia will also pay holders of Class 2 Claims any net proceeds of Cascadia's pursuit of avoidance or recovery actions under Bankruptcy Code chapter 5 and its claim against HomeStreet arising from HomeStreet's attorney's June 11, 2010, letter to Cascadia's attorneys. Cascadia will also pay holders of Class 2 Claims ratably from any OFG Redirection Payments in accordance with Section 4.3.1.7 below, which Cascadia incorporates herein. The total payments to Class 2 claims from all sources under this plan shall not in any event exceed the lesser of the allowed Class 2 claims or $2,131,929. This plan impairs the Class 2 Claims.

4.3 Class 3 (HomeStreet). Except as provided in Option 2 below, Class 3 consists of HomeStreet's Allowed Secured Claim, less the amount of all payments by Cascadia to HomeStreet between the Petition Date and the Effective Date (the "Class 3 Allowed Secured Claim"), and its Allowed Unsecured Claim (the "Class 3 Allowed Unsecured Claim"). In addition to the Class 3 General Treatment terms set forth below, Cascadia will also treat the Class 3 Claims in accordance with the one of Options 1 through 3 set forth below elected by HomeStreet on a timely submitted ballot in connection with this plan, or if HomeStreet does not make such an election on a timely submitted ballot, Cascadia will deem HomeStreet to have elected treatment of the Class 3 Claims in accordance with Option 1 below.

4.3.1 Class 3 General Treatment. Cascadia will treat the Class 3 Claim in accordance with these Class 3 General Treatment terms regardless of which one of Options 1 through 3 HomeStreet elects or is deemed to have elected.



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

4.3.1.1 This plan impairs the Class 3 Claims.

4.3.1.2 By the 10th day after the Bankruptcy Court closes this case, Cascadia will pay HomeStreet the amount of Cascadia's deposits at Commerce Bank, including funds transferred from HomeStreet to Commerce Bank after the Petition Date, including Account Nos. 2037912 and 2037920, for application to reduce the principal amount of the Class 3 Allowed Secured Claim.

4.3.1.3 Only the New Bank Documents will evidence the Class 3 Claims. Among other things, the New Bank Documents will provide that Cascadia will not be in default under the New Bank Documents by reason of incurring any obligation in developing the Project, such as to build or otherwise provide a fire station, wastewater treatment facility, or any other infrastructure, the unpaid obligation to pay for which by statute is secured by a lien senior to HomeStreet's lien or by reason of the creation of a local improvement district or community facility district affecting HomeStreet's collateral.

4.3.1.4 For the avoidance of doubt, HomeStreet will have a lien on improvements, including residential and commercial structures, on the real property collateral for the Class 3 Allowed Secured Claim.

4.3.1.5 The following property will be free and clear of any lien, Claim, or interest of HomeStreet: (a) all property Cascadia will transfer to Holdings under Option 3 and (b) all real or personal property that Cascadia sells, leases, or otherwise transfers at arm's-length in the ordinary course of business or to the extent required to develop the Project, including without limitation any interest of Cascadia in real or personal property to the extent necessary to permit Cascadia to grant any easement, temporary use right, or permanent public dedication necessary or appropriate to complete improvements or when required by public agencies in connection with the Project. By way of example only, Cascadia may take all necessary or appropriate actions to form, make transfers (free and clear of any lien, Claim, or encumbrance of HomeStreet) to, or operate one or more homeowners' associations in



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

connection with the Project. For the additional avoidance of doubt, Cascadia's sales of real property in the ordinary course of its business include bulk lot sales. Except to the extent this plan permits Cascadia to make distributions, Cascadia must reinvest in the Project all proceeds of its property sales or other revenue.

4.3.1.6 Before Cascadia makes any distributions, Cascadia must certify to HomeStreet that, at the time of and after giving effect to the distribution, and not considering any obligation to Cascadia Land, LLC, or contingent obligations to the servicing entity described in the Letter of Intent, Cascadia will retain assets worth 110 percent of the amount required to comply with RCW 25.15.235 and provide to HomeStreet an appraisal of Cascadia's assets, prepared by a member of the Appraisal Institute who regularly completes appraisals for banks, with an effective date not earlier than 90 days before the certification date. If HomeStreet delivers to Cascadia a written objection to the distribution not later than 10 days after the certification date, a single arbitrator selected by and operating under the rules of Judicial Dispute Resolution, LLC, of Seattle, Washington ("JDR"), will, not later than 45 days after JDR receives an arbitration demand from either Cascadia or HomeStreet, make a binding, nonappealable determination whether, at the time of and after giving effect to the distribution, Cascadia will retain assets worth 110 percent of the amount required to comply with RCW 25.15.235. Cascadia may make the distribution only if the arbitrator determines that, at the time of and after giving effect to the distribution, Cascadia will retain assets worth 110 percent of the amount required to comply with RCW 25.15.235. The party that does not prevail in the arbitration must pay the arbitrator's fee and reasonable attorney fees and costs and appraisal fees of the prevailing party. Cascadia's certification and appraisal delivery to HomeStreet will be effective upon delivery to HomeStreet or three days after mailing to HomeStreet. Any objection by HomeStreet will be effective upon delivery to Cascadia or three days after mailing to Cascadia.



**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

4.3.1.7 Payment Redirection. Until all payments required under this plan to HomeStreet and unsecured creditors (other than Cascadia Land, LLC) have been made: (i) Holdings will redirect any amount otherwise payable as a distribution to OFG by Holdings, and (ii) servicing entity will redirect any amount of any contingent service fee otherwise distributable to OFG by servicing entity. The amounts redirected by Holdings and servicing entity pursuant to this paragraph (the "OFG Redirection Payments") will be paid first to HomeStreet for application to Cascadia's indebtedness until paid in full as provided in this plan, and then to unsecured creditors (other than Cascadia Land, LLC) until their claims have been paid in full as provided in this plan. Nothing in this paragraph requires redirection by servicing entity of any portion of the monthly fee paid to OFG, as described in the Letter of Intent, or amounts paid to OFG as reimbursement for costs incurred. OFG will be subrogated to the rights of HomeStreet and the unsecured creditors to the extent of the OFG Redirection Payments. Cascadia will pay OFG its subrogation claim in the same manner Cascadia would have paid HomeStreet and the unsecured creditors but for the OFG Redirection Payments. OFG's subrogation claim arising from the OFG Redirection Payments will have priority over any other subrogation claims.

4.3.2 Option 1. Class 3 consists both of the Class 3 Allowed Secured Claim and the Class 3 Allowed Unsecured Claim. HomeStreet will have no Class 2 Claim.

4.3.2.1 By the 10th day after the Bankruptcy Court closes this case, Cascadia will pledge to HomeStreet a deposit account at another financial institution or other liquid assets worth $15 million (the "Road Reserve") as additional collateral that HomeStreet may apply to its Claim if HomeStreet becomes entitled to exercise its default remedies under Section 11.1 below. Within a commercially reasonable and practicable time after the Effective Date, Cascadia may obtain a bond or otherwise secure completion of the 198th Street access corridor improvements pursuant to the Agreement Between Pierce County and Cascadia Development Corporation with the Implementation of Mitigation of Traffic Impacts from



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

Phase 1 of the Cascadia Employment Based Planned Community by the Construction of Improvements Along the 198th Avenue E. Corridor, Recorded with the Pierce County Auditor by August 1, 2005, under Recording No. 200508010610 or any lesser 198th Street access corridor improvements that Pierce County may require (the "Road Improvements"). Cascadia may use funds in the Road Reserve to pay for the Road Improvements or to secure the bond or other security for the Road Improvements, and if permitted by any surety and Pierce County, HomeStreet will have a lien on Road Reserve funds used to secure the bond or other security for the Road Improvements. HomeStreet's lien on any unused Road Reserve funds will terminate upon completion of the Road Improvements.

4.3.2.2 If HomeStreet timely and properly makes an election under Bankruptcy Code § 1111(b) and elects Option 1 or does not elect an option, then (1) the Bankruptcy Code § 1111(b) election will not affect this plan's definition of "Class 3 Allowed Secured Claim"; and (2) by the first day of the 84th month that begins after the Effective Date, Cascadia will pay HomeStreet the greater of (a) any unpaid amount of the Class 3 Allowed Secured Claim, with interest from the Effective Date at the Prime Rate plus 2 percent per annum (i.e., 200 basis points), and (b) any amount by which the sum of the Class 3 Allowed Secured Claim and the Class 3 Allowed Unsecured Claim as of the Effective Date exceeds the aggregate amount of all payments by or on behalf of Cascadia to HomeStreet from and after the Effective Date.

4.3.2.3 If HomeStreet does not timely and properly make an election under Bankruptcy Code § 1111(b), and HomeStreet elects Option 1 or does not elect an option, then (1) by the first day of the first month that begins after the Effective Date and by the first day of each month thereafter through the 83rd month that begins after the Effective Date, Cascadia will pay HomeStreet (i) an amount determined by amortizing over 25 years the Class 3 Allowed Secured Claim with interest at the Prime Rate plus 2 percent per annum (*i.e.*, 200 basis points) and (ii) 1/300th of the Class 3 Allowed Unsecured Claim, and (2) Cascadia



**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

will pay the balances of both claims by first day of the 84th month that begins after the Effective Date.

4.3.3 Option 2. Class 3 consists only of the Class 3 Allowed Secured Claim. (This plan treats HomeStreet's Allowed Unsecured Claim in Class 2.)

4.3.3.1 By the first day of the first month that begins after the Effective Date and by the first day of each month thereafter through the 83rd month that begins after the Effective Date, Cascadia will pay HomeStreet (i) an amount determined by amortizing over 25 years the Class 3 Allowed Secured Claim with interest at the Prime Rate plus 2 percent per annum (*i.e.*, 200 basis points). On the first day of the 84th month that begins after the Effective Date, Cascadia will pay HomeStreet the balance of the Class 3 Allowed Secured Claim with interest.

4.3.3.2 By the 10th day after the Bankruptcy Court closes this case, Holdings will pledge to HomeStreet the Road Reserve as additional collateral that HomeStreet may apply to its Claim if HomeStreet becomes entitled to exercise its default remedies under Section 11.1 below. Within a commercially reasonable and practicable time after the Effective Date, Cascadia may obtain a bond or otherwise secure completion of the Road Improvements. Cascadia may use funds in the Road Reserve to pay for the Road Improvements or to secure the bond or other security for the Road Improvements, and if permitted by any surety and Pierce County, HomeStreet will have a lien on Road Reserve funds used to secure the bond or other security for the Road Improvements. HomeStreet's lien on any unused Road Reserve funds will terminate upon completion of the Road Improvements.

4.3.4 Option 3. HomeStreet may elect Option 3 only if it timely votes to accept this plan, does not file an objection to plan confirmation, and does not appeal the order confirming this plan. Class 3 consists both of the Class 3 Allowed Secured Claim and the Class 3 Allowed Unsecured Claim. HomeStreet will have no Class 2 Claim.



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

4.3.4.1 By the 10th day after the Bankruptcy Court closes this case, Cascadia will pay HomeStreet $10 million for application to reduce the Class 3 Allowed Secured Claim, and Cascadia will pledge to HomeStreet a deposit account at another financial institution or other liquid assets worth $4 million (the "Additional Collateral") as additional collateral that HomeStreet may apply to its Claim if HomeStreet becomes entitled to exercise its default remedies under Section 11.1 below. HomeStreet's lien in the Additional Collateral will expire on the first Business Day of the first month that begins 36 months after the Effective Date. After Cascadia makes the $10 million payment, it will base the interest-only payments through the 60th month beginning after the Effective Date on the reduced principal balance of the Class 3 Allowed Secured Claim.

4.3.4.2 On the first day of the first month that begins after the Effective Date and by the first day of each month thereafter through the 60th month beginning after the Effective Date, Cascadia will pay HomeStreet interest only that has accrued after the Effective Date on the unpaid balance of the Class 3 Allowed Secured Claim at the Prime Rate as of the Effective Date plus 2 percent per annum (i.e., 200 basis points). On the first day of the 61st month that begins after the Effective Date and by the first day of each month thereafter through the 107th month that begins after the Effective Date, Cascadia will make a payment to HomeStreet in an amount determined by amortizing over 20 years the Class 3 Allowed Secured Claim, with interest at the Prime rate plus 2 percent per annum (i.e., 200 basis points). Cascadia will make a balloon payment of the balance of the Class 3 Allowed Secured Claim by the first date of the 108th month that begins after the Effective date.

4.3.4.3 On the first day of the 61st month that begins after the Effective Date and by the first day of each month thereafter through the 107th month that begins after the Effective Date, Cascadia will pay HomeStreet 1/240th of the amount of the Class 3 Allowed Unsecured Claim. Cascadia will pay the balance of the Class 3 Claims (with any interest that has accrued and remains unpaid on the Class 3 Allowed Secured Claim but



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

with no interest on the Class 3 Allowed Unsecured Claim) by the first day of the 108th month that begins after the Effective Date.

4.3.4.4 By the 10th day after the Bankruptcy Court closes this case, Cascadia will pledge to HomeStreet the Road Reserve as additional collateral that HomeStreet may apply to its Claim if HomeStreet becomes entitled to exercise its default remedies under Section 11.1 below. Within a commercially reasonable and practicable time after the Effective Date, Cascadia may obtain a bond or otherwise secure completion of the Road Improvements. Cascadia may use funds in the Road Reserve to pay for the Road Improvements or to secure the bond or other security for the Road Improvements, and if permitted by any surety and Pierce County, HomeStreet will have a lien on Road Reserve funds used to secure the bond or other security for the Road Improvements. HomeStreet's lien on any unused Road Reserve funds will terminate upon completion of the Road Improvements.

4.3.4.5 In accordance with this plan, including the Letter of Intent, Cascadia will transfer to Holdings, free and clear of all liens, security interests, Claims, or encumbrances of any kind, ownership of parcels K1, K2, L, L1, M1, and M5 of the Project (the "Existing Lots") and Cascadia's membership in Cascadia Resort Communities LLC, and any other rights and interests needed to access, hold, develop, sell, use, and provide sewer and water service for the Existing Lots and the land owned by Cascadia Resort Communities LLC.

4.3.4.6 Cascadia releases all claims against HomeStreet, its officers, directors, attorneys, and other agents arising on or before the Effective in connection with HomeStreet's prepetition loans to Cascadia or this case, including claims for damages resulting from HomeStreet's attorney's June 11, 2010, letter to Cascadia's attorneys.

4.3.4.7 HOMESTREET MUST RELEASE ALL GUARANTORS' GUARANTIES OF CASCADIA'S OBLIGATIONS TO HOMESTREET.

4.4 <u>Class 4 (City of Tacoma)</u>. Class 4 consists both of the City of Tacoma's Allowed Secured Claim evidenced by the Agreement Between Cascadia Development



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

Corporation and City of Tacoma Department of Public Utilities Water Division dated June 20, 2005 (the "First Agreement") ("Claim 4A") and its Allowed Unsecured Claim under three private agreements dated January 23, 2006, October 4, 2007, and December 21, 2007, and any amendments, modifications, or supplements thereto ("Claim 4B"). The City of Tacoma will retain its lien. This plan modifies the First Agreement by (1) deferring from June 12, 2012, to June 12, 2013, the date by which Cascadia must begin to pay interest if by then Cascadia has not satisfied the condition of 630 equivalent residential units ("eru's") and (2) deferring from June 20, 2015, to June 20, 2016, the date by which Cascadia must begin principal payments if by that date Cascadia has not satisfied the condition of 1000 eru's. Cascadia will otherwise pay the Class 4A Claim on the terms of the First Agreement. On or before the 60th day after the Effective Date, Cascadia will pay the City of Tacoma $85,722.74 on account of the Class 4B Claim. This plan impairs the Class 4 Claims.

4.5 Class 5 (Kuo's Claim based on payment to HomeStreet). Class 5 consists of Kuo's Allowed Secured Claim arising from his $1 million payment to HomeStreet, subrogating him to the Class 3 Allowed Secured Claim. Cascadia will pay the Class 5 Claim after paying OFG's subrogation claim in full and before paying all other subrogation claims. This plan impairs the Class 5 Claim. This plan treats Kuo's Interest in Class 6.

4.6 Class 6 (Interest). Cascadia will cancel and pay nothing to Kuo on account of the Interest.

4.7 Class 7 (Cascadia Land, LLC). Class 7 consists of the Allowed Claims of Cascadia Land, LLC, not to exceed the lesser of (a) $16.2 million or (b) the amount Cascadia Land, LLC has invested in Cascadia or its predecessors before the Filing Date, without interest or any other return, less any cash received by Cascadia Land, LLC from Cascadia or its predecessors. Cascadia will treat the Class 7 Claim in accordance with the provisions of the Letter of Intent but subject to Section 4.3 above.



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

## ARTICLE 5

## DISPUTED CLAIMS; CLAIM OBJECTIONS

Only Allowed Claims will receive distributions under this plan. Unless otherwise ordered by the Bankruptcy Court, all objections to Claims and Scheduled Amounts (other than administrative expenses) must be Filed and served on Cascadia, counsel for Cascadia, the Committee, and the holder of the Claim no later than the later of (a) 60 days after the Effective Date or (b) 60 days after the date (if any) on which a Proof of Claim is timely Filed in respect of an Allowed Unsecured Claim arising from rejection of an executory contract or unexpired lease ("Rejection Claim"). The Bankruptcy Court will set the last day for filing objections to administrative expenses. Except as the Bankruptcy Court may otherwise order, the Bankruptcy Court will resolve all Disputed Claims.

## ARTICLE 6

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

At or before the time of the confirmation hearing, Cascadia will File a schedule of executory contracts and unexpired leases that it will assume. Without limitation, Cascadia assumes the three private agreements discussed in Section 4.4 above, as to which there are no late obligations.

## ARTICLE 7

## EFFECT OF CONFIRMATION

In accordance with Bankruptcy Code § 1141, Cascadia will have no liability, contingent or otherwise, for any matter, except for (i) liabilities to HomeStreet and other creditors undertaken in this plan; and (ii) liabilities incurred after and based on events occurring after the Effective Date.

The Committee's existence will terminate on the Effective Date.



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

## ARTICLE 8

## ADMINISTRATIVE PROVISIONS

8.1 Post-Effective Date United States trustee fees. Cascadia will timely pay United States trustee quarterly fees that become due after the Effective Date until the Bankruptcy Court closes, converts, or dismisses this case. Cascadia will File and serve all required financial reports for each month, or portion thereof, that this case remains open. Cascadia may move to close and reopen the case at any time.

8.2 Modification or withdrawal of plan. Cascadia may alter, amend or modify this plan pursuant to Bankruptcy Code § 1127 and Bankruptcy Rule 3019 at any time before the Confirmation Date. After that time, and before the substantial consummation of this plan, Cascadia may, so long as the treatments of holders of Claims and Interests under this plan are not adversely affected, move in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this plan, the Disclosure Statement, or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of this plan; provided, however, that Cascadia will serve notice of that motion in accordance with Bankruptcy Rule 2002 on entities that could be affected by the motion.

8.3 Revocation or withdrawal of plan. If Cascadia revokes or withdraws this plan before the Effective Date, then this plan will be null and void, even if Cascadia has previously substantially consummated this plan.

8.4 Nonconsensual confirmation. Cascadia requests that the Bankruptcy Court confirm this plan pursuant to Bankruptcy Code § 1129(b) if this plan meets all requirements of Bankruptcy Code § 1129(a), except § 1129(a)(8) thereof, and this plan meets the requirements of Bankruptcy Code § 1129(b).

8.5 Small distributions. If any amount Cascadia would pay a Creditor in any distribution is less than $10, then Cascadia will not make the payment to the Creditor but instead must reallocate the payment among the other Claims in the Creditor's Class.



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

8.6 Unclaimed distributions. Each Creditor must serve on Cascadia (and, if this case remains open, File) notice of any change of the Creditor's mailing address. Cascadia will make a payment required by this plan by mailing a check for the payment by U.S. Postal Service, first-class mail, to the Creditor's last-known address as set forth on any address change notice, on the Creditor's proof of claim, or in the Schedules if the Creditor has not Filed a proof of claim. If within 60 days after Cascadia mails a check, the U.S. Postal Service returns the check to Cascadia or Cascadia's bank has not paid a check, then Cascadia will stop payment of the check and make reasonable efforts to determine whether the Creditor has a different current mailing address. If Cascadia identifies a new address for the Creditor, Cascadia will mail a replacement check for the same amount, addressing the check to the new address by U.S. Mail, certified mail, return-receipt requested. If within 60 days after a second mailing the U.S. Post Service returns the replacement check to Cascadia or Cascadia's bank has not paid the replacement check, then Cascadia will stop payment of the replacement check. If Cascadia stops payment of the first check and is unable to identify a new address for the Creditor, or if Cascadia stops payment of a replacement check, then the Creditor waives its Claim and forfeits that check and later distributions on account of its Claim. Cascadia will make a ratable distribution of the amount of a forfeit check to other Claims in the same Class at the time of the next regular distribution to that Class or after the final regular distribution to that Class.

## ARTICLE 9

## RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order, the Court has jurisdiction of this case pursuant to and for the purposes set forth in Bankruptcy Code § 1127(b). The matters over which the Bankruptcy Court will retain exclusive jurisdiction include: (a) any pending applications for the rejection of executory contracts or unexpired leases and claims resulting therefrom; (b) any adversary proceedings, applications, or other contested matters;



**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

(c) distributions to holders of allowed claims; (d) objections to or requests for estimations of claims, including any objections to the classification of any claim and to allow, disallow and/or estimate any claim in whole or in part; (e) entering and implementing orders if the Confirmation Order is for any reason stayed, revoked, modified or vacated; (f) issuing any appropriate orders in aid of execution of this plan or to enforce the Confirmation Order; (g) applications to modify this plan, to cure any defect or omission or to reconcile any inconsistency in this plan or in any order of the Bankruptcy Court, including the Confirmation Order; (h) applications for compensation and reimbursement of expenses of professionals under the Bankruptcy Code; (i) disputes arising in connection with the interpretation, implementation or enforcement of this plan; (j) other issues presented or arising under this plan; (k) any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code; and (*l*) a final decree closing this case.

## ARTICLE 10

## MISCELLANEOUS PROVISIONS

10.1 Governing law. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal laws are applicable, the laws of the State of Washington govern the construction and implementation of this plan and all rights and obligations arising under this plan.

10.2 Withholding and reporting requirements. In connection with this plan and all instruments issued in connection therewith and distributions thereon, Cascadia will comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authorities, and all distributions hereunder are, to the extent applicable, subject to any withholding, reporting, certification and information requirements. Entities entitled to receive distributions hereunder must, as a condition to receiving those distributions, provide that information and take steps as Cascadia may reasonably require to ensure compliance with those withholding and reporting requirements



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

and to enable Cascadia to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

10.3 § 1146(c) exemption. Pursuant to Bankruptcy Code § 1146(c), the issuance, transfer or exchange of any security under this plan, the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this plan, or the vesting, transfer or sale of any real property of Cascadia pursuant to, in implementation of or as contemplated by this plan, may not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any city, county or governmental unit in which any instrument hereunder is to be recorded must, pursuant to the Confirmation Order, accept the instrument without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax. Without limitation, this Section 10.3 and § 1146(c) exempt from taxation the following transfers of property from Cascadia to Holdings and all others required or permitted by this plan, including the Letter of Intent: the 100-percent membership interest in Cascadia, the Existing Lots, and Cascadia's membership interest in Cascadia Resort Communities LLC.

10.4 Severability. If any provision of this plan is determined to be unenforceable, that determination will not limit or affect the enforceability and operative effect of any other provisions of this plan. To the extent that any provision of this plan would, by its inclusion in this plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of Cascadia, may modify or amend that provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of this plan existing by reason of that provision.

10.5 Binding effect. The provisions of this plan bind Cascadia and all holders of Claims and Interests, and their respective successors, heirs and assigns.



**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

10.6 Plan controls. In the event and to the extent that any provision of this plan is inconsistent with the provisions of the Disclosure Statement, the Letter of Intent, or any other instrument or agreement this plan contemplates be executed, the provisions of this plan control and take precedence.

10.7 Effectuating documents and further transactions. Cascadia, Yarrow Bay, TPG, and OFG must execute, deliver, file, or record those contracts, instruments, assignments, and other agreements or documents, and take or direct any actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this plan.

## ARTICLE 11

## DEFAULT

11.1 Event of default; consequences. An event of default under this plan occurs if any party in interest, including Cascadia and the parties to the Letter of Intent, fails to comply with a material plan provision. Any party alleging the occurrence of an event of default must give written notice of the alleged event of default to each of the following parties and their attorneys:

For Cascadia: The Cascadia Project, LLC
c/o *[Name of Servicer Entity]*

with copies to: Geoffrey Groshong
Miller Nash LLP
4400 Two Union Square
601 Union Street
Seattle, WA 98101-2352
Telephone: (206) 622-8484
Facsimile: (206) 622-7485
E-mail: Geoff.Groshong@millernash.com

– and –

David W. Hercher
Miller Nash LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, OR 97204-3699
Telephone: (503) 205-2628
Facsimile: (503) 205-8618
E-mail: dave.hercher@millernash.com

For OFG: Kevin D. Padrick
Obsidian Finance Group, LLC
10260 Greenburg Road, Suit 1150
Portland, OR 97223
Telephone: 503-245-8800
Facsimile: 503-245-8804
Email: kpadrick@obsidianfinance.com

For Yarrow Bay: Brian Ross
YB Cascadia LLC,
c/o Yarrow Bay Holdings, LLC
10220 NE Points Drive, Suite 120
Kirkland, WA 98033
Telephone: (425) 898-2101
Facsimile: (425) 898-2139
Email: bross@yarrowbayholdings.com

For TPG: A. Michael Muscolino
TPG Opportunities Partners, L.P.
345 California Street, Suite 3300
San Francisco, CA 94104
Telephone: (415) 486-5972
Facsimile: (415) 486-5901
mmuscolino@tpg.com

and, if this case remains open, to every entity that has Filed a request to receive all notices in this case. A party has given notice of an event of default to an entity entitled to notice either (i) when the noticing party has delivered the notice to the entity and, where applicable, to the entity's attorney, or (ii) when the noticing party has faxed the notice to the entity at a fax number set forth above or in the entity's Filed request to receive all notices, or (iii) on the first business day that is on or after the third day after the noticing party mailed the notice by first-class U.S. mail. If, after 30 days after the noticing party has given notice of an event of default to all entities to receive notice the defaulting party has not cured the event of default, the noticing party may exercise any remedies available to it under applicable law, subject to the Bankruptcy Court's retention of jurisdiction in Article 9 above to resolve any dispute regarding the existence of an event of default. The venue for any request to resolve any dispute under this plan must be in the Bankruptcy Court.

DATED this 2nd day of July, 2010.

MILLER NASH LLP

*/s/ Geoffrey Groshong*

Geoffrey Groshong
WSB No. 6124
David W. Hercher
WSB No. 21946

Attorney for The Cascadia Project LLC, Debtor-in-Possession



MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352