| | |
|---|---|
| 1 | EXHIBIT A |
| 2 | Letter of Intent |
```
1                           EXHIBIT A
2                          Letter of Intent
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
```

DISCLOSURE STATEMENT IN SUPPORT OF SECOND AMENDED PLAN OF REORGANIZATION proposed by THE CASCADIA PROJECT LLC - 37

**MILLER NASH LLP**
ATTORNEYS AT LAW
TELEPHONE: (206) 622-8484
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101-2352

SEADOCS:420153.12
552640.0004



May 28, 2010

Mr. Patrick W. Kuo
President/CEO
The Cascadia Project LLC
11232 NE 15th Street, Suite 201
Bellevue, Washington 98004

Subject: Letter of Intent for Acquisition and Funding of The Cascadia Project LLC, Reorganized Debtor

Dear Mr. Kuo:

This letter will confirm the current intention of TPG Opportunities Partners, L.P., acting through an affiliate ("TPG"), Yarrow Bay Holdings, acting through an affiliate ("Yarrow Bay"), and Obsidian Finance Group, LLC, acting through an affiliate ("OFG," and collectively with TPG and Yarrow Bay, "New Equity Investors") to acquire 100 percent of the equity interest in The Cascadia Project LLC, a Washington limited liability company ("Cascadia"), on the terms stated in this letter of intent. The acquisition of Cascadia's equity interest (the "Acquisition") will be accomplished through a newly formed limited liability company or other entity owned by New Equity Investors ("Holdings").

The principal terms of the Acquisition will be as follows:

1. <u>Background; Acquisition</u>. We understand that on October 15, 2009 (the "Filing Date"), Cascadia filed for bankruptcy under Chapter 11 of the federal Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington at Seattle, Case No. 09-20780 (the "Bankruptcy Case"). The assets of Cascadia constitute a bankruptcy estate supervised and managed by Cascadia as Debtor-in-Possession for the benefit of Cascadia's creditors. Cascadia is engaged in development and operation of the employment-based planned community on the property Cascadia currently owns and the golf course parcel owned by Cascadia Resort Communities, LLC (the "Project").

The parties will use good faith efforts:

(a) to negotiate and sign definitive Acquisition agreements and related documents mutually acceptable in form and substance (the "Definitive Agreements"); and

(b) to complete a closing of the Acquisition in accordance with the terms and conditions of the Definitive Agreements ("Closing") on the effective date (the "Effective Date") of the plan of reorganization (the "Plan") to be filed in the Bankruptcy Case.

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 f



We understand that Cascadia will seek an order confirming the Plan (the "Confirmation Order") from the United States Bankruptcy Court for the Western District of Washington at Seattle or such other court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case (the "Bankruptcy Court"), and that Cascadia intends that the Plan and Confirmation Order will be consistent with the Definitive Agreements when the Plan is confirmed.

Pursuant to the Plan (once confirmed by the Confirmation Order), all equity interests of Cascadia outstanding prior to the Effective Date will be canceled and 100 percent of the membership interests of Cascadia, as reorganized under the Plan, will be issued to Holdings, as further described below. All references to Cascadia with respect to periods on and after the Effective Date are to Cascadia as the reorganized debtor.

2. <u>Equity Funding</u>.

(a) *Contribution to Holdings.* At Closing, New Equity Investors will contribute equity funding to Holdings in an amount not less than needed to pay the expenses described below, and provide approximately 12 months of working capital. The total amount to be contributed at Closing is estimated to be approximately $45,300,000. Each New Equity Investor will provide a commitment to contribute additional equity funding as needed for the Project and requested by Holdings, up to the total funding commitment (including amounts contributed at Closing) shown below:

| Investor | Funding Commitment | % Ownership |
|---|---|---|
| TPG | $49,500,000 | 90.0% |
| Yarrow Bay | $ 4,400,000 | 8.0% |
| OFG | $ 1,100,000 | 2.0% |
| **Total** | **$55,000,000** | **100.0%** |

In return for New Equity Investors' contribution, the membership interests in Holdings will be issued to New Equity Investors in the respective percentages shown above. Equity funding contributed at Closing and additional equity funding contributed after Closing will be provided by New Equity Investors pro rata, in proportion to each New Equity Investor's total funding commitment.

(b) *Application of Funds.* Funding provided to Holdings will be used to pay the Debtor-In-Possession loan from Mr. Y. K. Chen, closing expenses, Investor Transaction Expenses described in Section 11 below, expenses of the Bankruptcy Case, and other amounts agreed by the parties. Remaining funding provided to Holdings at Closing will be used for working capital.

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 *f*



(c)   *Cascadia Equity and Certain Properties*. Pursuant to the Plan, Holdings will receive at Closing 100% of the LLC membership interest in Cascadia; parcels K1, K2, L, L1, M1, and M5 of the Project (the "Existing Lots"); and Cascadia's LLC membership interest in Cascadia Resort Communities, LLC.

(d)   *Non-Interest Bearing*. Contributions by New Equity Investors will not bear interest and will not be secured.

3.   Servicing; Fees.

(a)   *Agreement*. The Project will be managed by an entity established to provide servicing and asset management services ("Servicing Entity") owned 60 percent by Yarrow Bay and 40 percent by OFG. Cascadia will enter into a servicing agreement with Servicing Entity for the benefit of both Holdings and Cascadia, under which Servicing Entity will be paid a monthly servicing fee of $75,000 for its services and for being responsible for indirect overhead (the "Monthly Fee"). The agreement may be terminated only for cause, to be defined in the agreement. Upon termination, Servicing Entity will be paid through the date of termination, and will retain all amounts previously received under the agreement.

(b)   *Services Covered*. The Monthly Fee is intended to cover costs of any Servicing Entity personnel and overhead costs, and personnel and overhead costs incurred by Yarrow Bay or OFG in providing services relating to the Project. All direct costs of other Project personnel will be paid directly by Cascadia or by reimbursement.

(c)   *Business Plans*. Servicing Entity will operate the Project in accordance with business plans approved from time to time by Holding's and Cascadia's respective boards of managers.

4.   LLC Agreement; Distributions.

(a)   *Waterfall*. As of Closing, Cascadia's limited liability company agreement (the "LLC Agreement") will provide for distributions of Excess Cash (as defined below) to New Equity Investors, Servicing Entity, and those persons who held equity interests in Cascadia prior to the Filing Date ("Existing Equity"), in the following order and percentages:

(i)   To New Equity Investors until New Equity Investors have received the full amount of the capital contributed by New Equity Investors to Holdings (the "Investment") and have received an IRR of 12% on the Investment

(ii)   90% to New Equity Investors and 10% to Servicing Entity until New Equity Investors have received an IRR of 20% on the Investment and a cash-on-cash multiple of 2 *times* the Investment

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 *f*



    (iii) 80% to New Equity Investors and 20% to Servicing Entity until New Equity Investors have received an IRR of 25% on the Investment and a cash-on-cash multiple of 3 *times* the Investment

    (iv) 60% to New Equity Investors and 20% to Servicing Entity and 20% to Existing Equity until New Equity Investors have received an IRR of 30% on the Investment and a cash-on-cash multiple of 4 *times* the Investment

    (v) Thereafter, 50% to New Equity Investors, 25% to Servicing Entity, and 25% to Existing Equity until Existing Equity has been paid in full, and then 50% to New Equity Investors and 50% to Servicing Entity

  (b) *Limitations*. Distributions to Existing Equity will be limited to the cash invested in Cascadia or its predecessors prior to the Filing Date, less any cash received by Existing Equity from Cascadia or its predecessors. This limit is estimated to be approximately $17,000,000. Subject to Section 6(c), the LLC Agreement will provide that the distribution provisions cannot be amended without the consent of Holdings, Servicing Entity, and, until fully paid, Existing Equity.

  (c) *Excess Cash*. "Excess Cash" will be cash available for distribution by Cascadia after paying or reserving for all current expenses of the Project and other agreed amounts, including without limitation current payments of principal and interest for outstanding new and existing indebtedness (including, without limitation, indebtedness to Homestreet Bank ("Homestreet"), to unsecured creditors to the extent payment is required by the Plan, and to City of Tacoma), project costs (including the Monthly Fees), and an appropriate operating reserve (taking into consideration the ability to draw under equity or debt facilities).

 5. Homestreet.

  (a) *Restructuring*. The Plan will provide for indebtedness to Homestreet to be restructured on terms not less favorable to Cascadia than the following:

    (i) A $10,000,000 payment on Cascadia indebtedness will be made at Closing;

    (ii) A $4,000,000 interest reserve will be established at Closing, will constitute additional collateral, and will be released to Holdings three years after the Effective Date;

    (iii) The interest rate payable to Homestreet will be fixed at prime as of the Effective Date, plus 200 basis points;

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 *f*



        (iv)    Interest will accrue only on the value of Homestreet's interest in the collateral as of the Filing Date;

        (v)    Payment terms will be interest only for five years, then fully amortizing on a 20-year basis with a four-year balloon from the date amortization begins (monthly amortized payments will be the amount needed to fully amortize the interest-bearing portion of the debt over 20 years, plus $1/240^{th}$ of the non-interest bearing portion of the principal); and

        (vi)    The Existing Lots will be released.

    (b)    *Access Improvements*. Cascadia will provide cash collateral to the extent needed to ensure, through bonding or otherwise, that 198th Avenue access improvements having an estimated total cost of approximately $15,000,000 are contracted and completed.

    (c)    *Payment Redirection*. Until such time as Homestreet has been paid in full, amounts otherwise payable to Existing Equity and Kuo (except an agreed amount increased by the CPI-W to provide for living expenses for Kuo) will be paid to Homestreet to reduce the indebtedness owing to Homestreet. Existing Equity and Kuo will be treated as if subrogated to the rights of Homestreet and shall be paid on a subordinate basis to Homestreet in the same manner as Homestreet would have otherwise been paid had the payments due Existing Equity and Kuo not been used to pay Homestreet. Kuo's right of subrogation resulting from Homestreet's draw upon the Letter of Credit backed by Kuo's assets shall be paid prior to all other subrogation rights specified herein.

6.    <u>Call Right</u>.

    (a)    *Exercise Price*. Holdings will grant Kuo a call right (the "Call Right") under which Kuo can acquire all Holdings' membership interests upon payment to Holdings of an exercise price as follows:

        (i)    During the first three years after the Effective Date, such amount as will result in both of the following: an IRR of 25% and a cash-on-cash multiple of 3 *times* the aggregate amount of capital contributed by New Equity Investors to Holdings

        (ii)    During the fourth year after the Effective Date, such amount as will result in both of the following: an IRR of 25% and a cash-on-cash multiple of 4.5 *times* the aggregate amount of capital contributed by New Equity Investors to Holdings

        (iii)    During the fifth year after the Effective Date, such amount as will result in both of the following: an IRR of 25% and a cash-on-cash multiple of 6 *times* the aggregate amount of capital contributed by New Equity Investors to Holdings

TPG Opportunities Partners , L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 *f*



(b) *Transfers*. Any transfer by New Equity Investors of a membership interest in Holdings will be subject to the Call Right, which the transferee will be required to acknowledge in writing.

(c) *Distribution*. Holdings' limited liability company agreement will provide for the exercise price of the Call Right to be immediately distributed to New Equity Investors and Servicing Entity as follows, in lieu of the waterfall distribution provisions described in Section 4(a) above:

(i) New Equity Investors shall receive an amount such that the total distributions received by New Equity Investors from Holdings or Cascadia during the period from the Effective Date through and including the distribution of the Call Right exercise price (the "Distribution Period"), will represent 90% of all distributions made by Holdings or Cascadia during the Distribution Period, other than distributions to Existing Equity

(ii) Servicing Entity shall receive an amount such that the total distributions received by Servicing Entity from Holdings or Cascadia during the Distribution Period will represent 10% of all distributions made by Holdings or Cascadia during the Distribution Period, other than distributions to Existing Equity

(iii) Existing Equity shall be entitled to retain whatever it has received prior to the date of the exercise of the Call Right, but shall not be entitled to any distribution from the exercise of the Call Right.

(d) *Effect on Servicing Agreement*. Upon exercise of the Call Right, Servicing Entity's board of managers will have the option to terminate the servicing agreement, in which case Servicing Entity will be dissolved and wound up.

7. Governance.

(a) *Holdings; Cascadia*. Holdings and Cascadia will each be governed by a board of managers of five managers, three of whom will be chosen by TPG, one of whom will be chosen by Yarrow Bay, and one of whom will be chosen by OFG.

(b) *Servicing Entity*. Servicing Entity will be governed by a board of managers (the "Management Board") of five managers, three of whom will be chosen by Yarrow Bay and two of whom will be chosen by OFG. During the period that the Management Board authorizes participation by *ex officio* members, Kuo will be an *ex officio* member of the Management Board, based on his status as Cascadia Founder.

TPG Opportunities Partners , L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 *f*



(c) *Majority Decisions.* Unless otherwise specified, matters submitted to the board of managers of Holdings, Cascadia, or Servicing Entity will be decided by majority vote of the managers.

(d) *Founder Retention; Incentive Arrangements.* Cascadia will enter into an agreement to retain Kuo as Cascadia Founder, under which Kuo will be paid for a minimum term of 36 months to provide services on projects assigned by the Management Board in its discretion. Kuo will report directly to the Management Board. Kuo and other executive management to the extent retained by the Management Board will be provided with an incentive compensation package approved by the Management Board.

8. <u>Holdings and Servicing Entity Right of First Refusal</u>. TPG, Yarrow Bay, and OFG will have typical rights of first refusal to purchase each other's interests in Holdings or Servicing Entity in case of a proposed transfer to a third party. No party may encumber its interest in Holdings or Servicing Entity without the other members' consent, which may be withheld in each members' sole discretion.

9. <u>Definitive Agreements</u>. As soon as practicable after the acceptance of this letter, TPG, Yarrow Bay, OFG, and Cascadia will negotiate in good faith the terms and conditions of the Definitive Agreements governing the Acquisition. It is anticipated that the Definitive Agreements will contain, in addition to the provisions set forth in this letter, customary and reasonable terms and conditions, representations, warranties, covenants and remedies, except that Cascadia will make no warranties other than limited warranties as to organization and authority and will provide no indemnities.

10. <u>Conditions to Closing</u>. The parties' respective obligations to close the Acquisition will be subject to the following:

(a) The parties will have received any approvals required in connection with the Acquisition and the Plan;

(b) The Confirmation Order must contain a provision stating that reorganized Cascadia, upon confirmation, will have no liability, contingent or otherwise, for any matter, except for (i) liabilities to Homestreet and other secured creditors; (ii) liabilities incurred after and based on events occurring after Closing; and (iii) any other liabilities the parties expressly agree will be assumed by reorganized Cascadia or that actually are expressly assumed by reorganized Cascadia; and

(c) The Plan and Confirmation Order must be consistent with the Definitive Agreements and acceptable to TPG and Yarrow Bay.

TPG Opportunities Partners , L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 *f*



11. <u>Break-Up Fee</u>. Promptly after execution of this letter of intent, Cascadia will use its best efforts to obtain an order in the Bankruptcy Case requiring payment of a break-up fee, as follows. The break-up fee will be not less than $2,500,000, will be payable to TPG and Yarrow Bay, and will be paid if TPG and Yarrow Bay are prepared to negotiate Definitive Agreements and close the Acquisition, but Cascadia sells to another party or parties any of its membership interests or any material portion of its assets.

12. <u>Expenses</u>. Each of the parties will be responsible for its own expenses, and no party will be liable to the other party for expenses incurred in connection with the proposed transaction. Notwithstanding the foregoing, at and subject to Closing Holdings will pay all out-of-pocket transaction expenses of TPG, Yarrow Bay, and OFG, including counsel fees (the "Investor Transaction Expenses").

13. <u>No Public Announcement; Confidentiality</u>. Until filing of the Disclosure Statement in the Bankruptcy Case, each party shall refrain from disclosing, and shall prohibit its agents from disclosing, any information regarding the Acquisition or any nonpublic business information about any party to third persons (including, without limitation, any corporation, company, partnership, and individual) without first obtaining the written consent of the other parties, which consent may be given by TPG on behalf of New Equity Investors. Notwithstanding the foregoing, Cascadia may make appropriate disclosures pursuant to its obligations under the Bankruptcy Code (including disclosures to the Committee for Unsecured Creditors established in the Bankruptcy Case) and each party may disclose information to the extent required by law and to its attorneys, accountants, lenders, or consultants providing services relating to the proposed acquisition.

14. <u>Termination of Negotiations</u>. Negotiations with respect to the Acquisition may be terminated by TPG, Yarrow Bay, OFG, or Cascadia at any time.

15. <u>Nonbinding Nature</u>. This letter outlines only the preliminary understanding and proposal of the parties with respect to the proposed Acquisition, and is only a statement of the present intention of the parties. The parties do not intend to be bound by any agreement until they reach agreement on and sign Definitive Agreements, and no party may reasonably rely on any promises or understandings inconsistent with this Section 15.

If this letter is acceptable to Cascadia, please approve the letter and evidence your approval by causing the enclosed copy of this letter to be signed and dated by a duly authorized representative of Cascadia and returned to TPG in care of Mike Muscolino, on or before the close of business on May 28, 2010.

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 *f*



Very truly yours,

TPG OPPORTUNITIES PARTNERS, L.P.
By TPG Opportunities Advisors, Inc., General Partner

By _____[signature]_____
    A. Michael Muscolino
Title:  Managing Director

YARROW BAY HOLDINGS

By _____
    President

OBSIDIAN FINANCE GROUP, LLC

By _____
    Kevin Padrick, Member

Agreed to and accepted as of May ____, 2010:

THE CASCADIA PROJECT LLC

By _____
Patrick Kuo
President/CEO

TPG Opportunities Partners , L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
(415) 486-5900
(415) 486-5901 *f*
www.tpg.com



Very truly yours,

TPG OPPORTUNITIES PARTNERS, L.P.
By TPG Opportunities Advisors, Inc., General Partner

By _____
    A. Michael Muscolino
Title:  Managing Director

YARROW BAY HOLDINGS

By _____
    President

OBSIDIAN FINANCE GROUP, LLC

By _____
    Kevin Padrick, Member

Agreed to and accepted as of May ____, 2010:

THE CASCADIA PROJECT LLC

By _____
Patrick Kuo
President/CEO

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-5900
(415) 486-5901 f



Very truly yours,

TPG OPPORTUNITIES PARTNERS, L.P.
By TPG Opportunities Advisors, Inc., General Partner

By _____/s/_____
    A. Michael Muscolino
Title:  Managing Director

YARROW BAY HOLDINGS

By _____
    President

OBSIDIAN FINANCE GROUP, LLC

By _____/s/_____
    Kevin Padrick, Member

Agreed to and accepted as of May ____, 2010:

THE CASCADIA PROJECT LLC

By _____
Patrick Kuo
President/CEO

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
(415) 486-5900
(415) 486-5901 /
www.tpg.com

# TPG

Very truly yours,

TPG OPPORTUNITIES PARTNERS, L.P.
By TPG Opportunities Advisors, Inc., General Partner

By _____/s/ A. Michael Muscolino_____
    A. Michael Muscolino
Title: Managing Director

YARROW BAY HOLDINGS

By _____
    President

OBSIDIAN FINANCE GROUP, LLC

By _____
    Kevin Padrick, Member

Agreed to and accepted as of May 28, 2010:

THE CASCADIA PROJECT LLC

By _____/s/ Patrick Kuo_____
Patrick Kuo
President/CEO

TPG Opportunities Partners, L.P.
345 California Street
Suite 3300
San Francisco, CA 94104
www.tpg.com

(415) 486-3900
(415) 486-9031 f